IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-cv-24

| | |
|---|---|
| CHAD SASSO; and<br>THE CHALLENGE PRINTING CO. OF<br>THE CAROLINAS, INC., On Behalf of<br>Themselves and All Others Similarly<br>Situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>TESLA, INC.,<br><br>      Defendant. | **FIRST AMENDED<br>CLASS ACTION COMPLAINT** |

For this Complaint, Plaintiffs, Chad Sasso ("**Sasso**") and The Challenge Printing Co. of the Carolinas, Inc. ("**Challenge Printing**") (collectively, "**Plaintiffs**"), by and through their attorneys, file this First Amended Class Action Complaint on behalf of themselves and all others similarly situated against Defendant, Tesla, Inc., ("**Defendant**" or "**Tesla**"), and allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action individually and on behalf of nationwide classes and, in the alternative, on behalf of statewide subclasses within the state of North Carolina (each class more fully defined below) for the benefit and protection of Tesla consumers.

2.     As alleged herein, Tesla's vehicles are defective insofar as each is equipped with a defective touchscreen display which routinely discolors and develops a "yellow band" around its perimeter after subjection to ordinary use. (The "**Defect**" or the "**Yellow Band Defect**," more fully described below). This Defect is covered by the express, written, and implied warranties

covering each Tesla vehicle, all of which Tesla has breached through a conscious policy of (a) concealing of its consumers' warranty rights, (b) implementing cheap and knowingly inadequate remedies, and (c) charging approximately $2,500.00 for an adequate touchscreen replacement.

3.      With regard to Tesla's warranty-concealment policy, according to a Tesla Service Center representative, it is Tesla's policy and practice to "constantly update" its warranty rights. After each "update," Tesla proceeds to hold out and represent its current warranty instrument online and in each consumers online Tesla account as binding on all consumers uniformly (regardless of the warranty each consumer purchased). Furthermore, Tesla goes on to remove and obstruct each consumer's access to their originally purchased warranty instrument. As further described below, each and every undisclosed, unconsented-to, and consideration-free "update" manifests, without exception, as a reduction of each consumer's warranty rights over time. ("**Tesla's Warranty Scheme**," more fully described below).

4.      As a result of both the Yellow Band Defect and Tesla's Warranty Scheme, each class member, including Plaintiffs, is unable to enjoy or realize upon resale the full value of the vehicle and/or warranty purchased.

5.      Plaintiffs bring this cause of action to obtain redress for those who have purchased or leased Tesla vehicles across the United States and to enjoin Tesla's Warranty Scheme in the future. Plaintiffs allege grounds for the following causes of action (1) breach of the Implied Warranty of Merchantability (N.C.G.S. § 25-2-314, *et seq.*), (2) a Declaratory Judgment (28 U.S.C. § 2201(a), F.R.C.P 57 and 23(B)(2)); (3) violation(s) of the North Carolina Unfair Trade Practices Act (N.C.G.S. § 75-1.1, *et seq.*), (4) breach(es) of the Express Warranty (N.C.G.S. § 25-2-313, *et seq.*), (5) violation(s) of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*), (6) breach of the

Implied Covenant of Good Faith and Fair Dealing (N.C.G.S. § 25-1-304, *et seq.*), and (7) violation of the North Carolina Punitive Damages statute (N.C.G.S. § 1D-1, *et seq.*).

6. Each claim is brought on behalf of the following proposed classes (more fully defined herein):

a. Each claim pertaining to the Yellow Band Defect is brought on behalf of a proposed nationwide class (and in the alternative, on behalf of a statewide sub-class) of purchasers or lessees of all Tesla vehicles containing the Defective screens as described herein.

b. Each claim pertaining to Tesla's Warranty Scheme is brought on behalf of a proposed nationwide class (and in the alternative, on behalf of a proposed statewide sub-class) of all Tesla purchasers or lessees.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the claims relating to the matter in controversy exceed $5 million (exclusive of interest and costs), the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiffs) and Defendant Tesla are citizens of different states; this Court has federal-question jurisdiction pursuant to 15 U.S.C. § 2301 *et seq.*; and this Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial District under 28 U.S.C. § 1391 because Defendant Tesla does business throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in this District.

9.      At all pertinent times, Tesla was engaged in the marketing, sale and lease of the Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

10.      Plaintiff Challenge Printing is, and was at all relevant times, an entity incorporated under the laws of North Carolina with a principal office in Lee County, North Carolina.

11.      Plaintiff Chad Sasso is, and was at all relevant times, an individual residing in, and a citizen of, Wake County, North Carolina. Sasso is an officer and owner of Plaintiff Challenge Printing and an authorized agent acting on behalf of Plaintiff Challenge Printing.

12.      Defendant Tesla is in the business of manufacturing, marketing, supplying, and selling motor vehicles with written warranties to the public at large. Tesla is a Delaware corporation headquartered at 3500 Deer Creek Road, Palo Alto, CA 94304 and with a locally registered office located at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615-6417.

## SUBSTANTIVE ALLEGATIONS

## I.      The Background of Tesla's Touchscreens and Their Integral Importance

13.      Tesla was founded in 2003 by a group of engineers including its now-current CEO, Elon Musk. Tesla launched its first vehicle, the Roadster, in 2008. Thereafter, Tesla designed an all-electric sedan, called the Model S. In 2015, Tesla expanded its product line with the Model X, a sport utility vehicle, and it now has added its Model 3 and Model Y to its product line.

14.      Since the beginning, Tesla embarked to become the first automotive manufacturer to install a large, high-resolution, touchscreen into its vehicles' dashboards and integrate such a touchscreen throughout the vehicles' systems. But this was no novel ideal. In fact, there was a race across the industry to do so. According to biographer Ashlee Vance, Elon Musk discussed the beginnings of Tesla's touchscreens as follows:

"When we first talked about the touch-screen, the guys came back and said, 'There's nothing like that in the automotive supply chain,'" Musk said. "I said, 'I know. That's because it's never been put in a fucking car before.'" Musk figured that computer manufacturers had tons of experience making seventeen-inch laptop screens and expected them to knock out a screen for the Model S with relative ease. "The laptops are pretty robust," Musk said. "You can drop them and leave them out in the sun, and they still have to work." After contacting the laptop suppliers, Tesla's engineers came back and said that the temperature and vibration loads for the computers did not appear to be up to automotive standards. Tesla's supplier in Asia also kept pointing the carmaker to its automotive division instead of its computing division. <u>As Musk dug into the situation more, he discovered that the laptop screens simply had not been tested before under tougher automotive conditions, which included large temperature fluctuations.</u> [1]

(Emphasis added).

15.     Tesla proceeded to integrate a large, 17-inch touchscreen into each of its models, creating Tesla an important nexus with Silicon Valley and ultimately giving rise to its half-tech-company, half-car-company brand image.

16.     The touchscreen Tesla selected for its vehicles was by a company named Innolux Corporation ("**Innolux**"). On information and belief, Tesla used the same Innolux touchscreen model, or others sharing the same defect, for all Tesla models: the **G170J1-LE1**. This model of Innolux touchscreen, along with any other sharing the defect, gives rise to this Complaint as a consequence of Tesla's failure to ensure that the touchscreens meet minimum automotive grade standards by *inter alia* a lack of ability to withstand ordinary and expected automobile temperatures. ("**Touchscreens**").

17.     These Touchscreens are unique from those found in all other models from other vehicle manufacturers. In Tesla's words, it is an "expansive touchscreen display <u>designed to</u>

---

[1] Ashlee Vance, *Elon Musk Tesla, SpaceX, and the Quest for a Fantastic Future* 271 (2015).

improve over time"[2] and "controls most of the car's functions,"[3] and it is "the "gem of the interior,"[4] it is "uncluttered,"[5] and it continues to get "better over time."[6]

18.     Indeed, the Touchscreens are essential to Tesla's vehicles' aesthetic and their luxury image. To wit:



19.     In addition, the Touchscreens are integral to the vehicles' functionality of virtually every system and safety feature. For example, the following are features and functions *exclusively* accessible through the Touchscreen:

a.  Door locks, child-protection locks, odometer, tripmeter, trunk opening, door handle settings, suspension settings, interior lighting controls, light safety functions, security alarm controls, tow mode controls, charging door controls and charging settings, the collision warning system, the lane-departure warning

[2] Exhibit A.
[3] Exhibit B.
[4] Exhibit C.
[5] Exhibit D.
[6] Exhibit E.

system, the blind-spot warning system, the automatic-emergency-braking system, the obstacle avoidance system, autopilot settings, camera calibration settings, wheel configuration settings, front & rear defrost controls, automatic wiper controls and settings, language settings, units & measurement settings, steering control settings, sunroof control, garage door controls, seat memory controls, heated seat controls, system updates, wireless configuration settings, the climate control system, the navigation system, the audio system, exterior light settings, acceleration-speed settings, steering modes, regenerative breaking settings, the entire audio/sound system, displaying warning notifications, critical gauges, self-driving mode, and the rear-view camera.

20.     By virtue of Tesla's incorporation of its many safety features into the computer behind its touchscreens (including but not limited to those described above), the Yellow Band Defect and the Touchscreen's unfitness for its ordinary purpose in an automobile implicates the accessibility, readability, and usability of those safety features, and ultimately, it implicates the safety of Tesla drivers, other drivers, and pedestrians.

21.     Between 2016 and 2020, Tesla produced approximately 1,280,000 vehicles between its four models — Model S, Model 3, Model X, and Model Y — all of which, upon information and belief, contain the aforementioned Touchscreens.

## II.     Plaintiff's Representative Purchase Experience

22.     Tesla operates unlike a traditional dealership insofar as a customer may not purchase a vehicle in person and drive it home. Tesla does not sell vehicles through authorized dealerships. Instead, Tesla operates such that its vehicles are sold exclusively by Tesla itself via an

online portal ("**MyTesla**") accessible either through the internet or through a station at a Tesla-owned showroom.

23.     Incident upon a purchase, Tesla consumers are provided with an online MyTesla account. Through MyTesla, the consumer may manage the account, schedule service appointments, receive and send communications to and from Tesla, and download certain documents Tesla makes available.

24.     In the Fall of 2016, Plaintiff Sasso placed an online order on behalf of Plaintiff Challenge Printing for a new 2016 Model S 60D from the Tesla store with the Dealer Number of 0073404 and located at 8831 Westgate Park Drive #102, Raleigh, NC 27617. The intended purpose of the ordered vehicle was to provide Sasso with a company vehicle which would be for his exclusive and primary use.

25.     The 2016 Model S 60D ordered had a Vehicle Identification Number ("VIN") of 5YJSA1E28GF173878 (the "**Vehicle**") and came equipped with one of the aforementioned Touchscreens.

26.     The purchase price of the Vehicle was $101,280.00 including all options, fees, and taxes.[7]

27.     After the purchase, Plaintiff Challenge Printing paid Tesla additional sums for software upgrades totaling $13,900.00, accessories totaling $4,264.68, and annual services totaling $550.00. Sasso individually incurred a portion of these expenses as well as the cost of upfitting his house with an in-home charging station and other accessories.

---

[7] Exclusive of Plaintiff's vehicle trade-in credit, referral credit, and later-incurred software-upgrade charges.

28.     At the time of the purchase, Tesla, through its agents and advertising, made express representations warranting the Vehicle's performance, quality, workmanship, as well as the style, functionality, and attractiveness of the Touchscreen itself. Furthermore, Tesla represented the Vehicle to come with the protection of a four-year warranty, which it promised to provide at or prior to the Vehicle's delivery.

29.     On November 8, 2016, Sasso, on behalf of Challenge Printing, placed the order for the Vehicle. Later that day Sasso received an auto-generated email from Tesla with his Motor Vehicle Purchase Agreement (version 20151020 en_US) attached.[8]

30.     The email did not contain any warranty document or information. Instead, the attached Motor Vehicle Purchase Agreement contained the following language: "You will receive the Tesla Motors New Vehicle Limited Warranty at or prior to the time of Vehicle delivery. You may also obtain a written copy of such warranty from us upon request or download it from your MyTesla account."[9] (Emphasis added).

31.     On December 15, 2016, Sasso picked up the Vehicle from the Tesla showroom. At no time did Plaintiffs receive the New Vehicle Limited Warranty; neither "at or prior to the time of Vehicle delivery," nor at any time thereafter.

32.     In general, Tesla provides copies of its owners' manuals and purchase agreements to its consumers exclusively through each customer's MyTesla account. Access to these documents is not provided prior to a vehicle purchase, and as further described below, it is Tesla's policy to not provide its consumers with any warranty document in any preserved or static form such that it may be reliably accessed and referred to after purchase and across time.

---

[8] Exhibit F, Motor Vehicle Purchase Agreement (version 20151020 en_US).
[9] Exhibit F, page 3.

### III.    **Allegations Pertaining to the "Yellow Band Defect"**

### A.    **Plaintiff's Representative Experience**

33.    On or around June 15, 2018, Sasso began to observe the Yellow Band Defect giving rise to this Complaint: a "yellow band" that bordered the display of the Vehicle's central touchscreen, which, over time, increased in prominence and thickness and darkened in color.

34.    On July 3, 2018, Plaintiff provided Tesla with its first opportunity to cure the Defect. Sasso brought the Vehicle to Tesla on that date, and Tesla retained the Vehicle for at least a week.

35.    Tesla specifically deemed the Defect to be covered under the warranty and replaced the Touchscreen outright with the same Touchscreen model.[10]

36.    Unfortunately, within approximately six months of the replacement, the Defect returned.

37.    As a second opportunity to cure the Defect, Plaintiff scheduled an appointment with Tesla for March 20, 2019. Eight days prior to the appointment, Tesla unilaterally cancelled. Tesla sent a text message stating, "Hello Chad, this is Tesla service of Raleigh reaching out about your upcoming appointment.  I wanted to let you know that Tesla is aware of the yellowing band, we are working on a resolution and it will be released in late spring."

38.    Late Spring came and went with no resolution. By October 2, 2019, Plaintiffs received no communication from Tesla. Sasso emailed the Tesla's Raleigh Service Center, copying numerous employees, asking to reschedule his appointment. Sasso received no reply.

---

[10] Exhibit G, page 1.

39.     On October 21, 2019, Plaintiff sent another email to Tesla's Raleigh Service Center, as well as to Tesla Support and at least six Raleigh Service Center employees. Sasso explained the outstanding Defect and complained of the lack of communication.

40.     In response, Sasso received an email from Chris Hatch, a Tesla Raleigh Service Center employee. Mr. Hatch stated, "We have the tool required to resolve the yellow screen border issue." Mr. Hatch directed Sasso to schedule an appointment for the service through Tesla's mobile app. Sasso did so, scheduling an appointment for November 1, 2019. This would mark Tesla's third opportunity to cure the Defect.

41.     The day before the scheduled appointment, Sasso received an email from Tesla with a PDF file attached. The PDF file detailed Tesla's resolution for the Defect. It stated that, instead of replacing the Touchscreen, Tesla would use an ultraviolet light to "mitigate" it.[11]

42.     Tesla's express abandonment of a true cure in lieu of an effort to "mitigate" the Defect constitutes and demonstrates Tesla's willful refusal to honor its warranty. Even still, Tesla's mitigation efforts failed.

43.     On November 1, 2019, Sasso dropped the Vehicle off with Tesla. Later that day, Tesla called Sasso and stated that the ultraviolet light had "burnt out" and that the scheduled service could not be performed.

44.     On November 12, 2019, Sasso received an email from Mr. Hatch. Hatch indicated that the replacement tool was available again and Sasso could schedule an appointment - Tesla's fourth opportunity to cure (or now, to "mitigate") the Defect. Sasso scheduled the next available appointment for November 18, 2019.

---

[11] Exhibit H, page 1.

45. Three days prior to the appointment, Mr. Aaron Jones, a Tesla Raleigh Service Center technician, sent an email to Plaintiff stating that, "The UV light treatment tool has malfunctioned again. The good, but future, news is that we are moving to another repair in the upcoming weeks (Estimated 3 weeks.) As your experience shows, the UV treatment tool was not very reliable, but I've been promised that this repair will be." (Emphasis added). Tesla's Raleigh Service Center Manager, Tiffany Correa, was copied on this email. Ms. Correa did not reply.

46. On December 3, 2019, Plaintiff scheduled another appointment for December 9, 2019 - Tesla's fifth opportunity to cure the Defect. The same day, Sasso emailed Aaron Jones and Tiffany Correa to confirm that this attempt would indeed be reliable, as Jones promised.

47. Mr. Jones replied on December 6, 2019, stating that Tesla had yet another issue with its "tooling" and that, yet again, the service could not be performed. Sasso again asked when the Defect would be permanently cured. Mr. Jones replied that, "At this point, this is all of the information we know."

48. On December 9, 2019, Sasso emailed Tiffany Correa:

Tiffany,

I know you have been copied on the emails regarding the yellow band on my Model S. I am trying to understand what the problem is and how it can be fixed.

Is this considered a warranty item? Will you replace the entire screen with a new one to prevent this issue from coming back? Is the "tool" fix on my existing screen permanent? What happens if it comes back after my warranty is expired?

Thanks your your [*sic*] help,

Chad Sasso

49. Ms. Correa ignored the email.

50.     On January 22, 2020, Sasso had a telephone call with Thomas Ian Ball, Tesla's Service Advisor. Ball stated, contrary to Jones, "the UV treatment is actually <u>not a permanent fix</u>." Ball went on to state that the Defect "<u>would be covered under the entirety of your four-year warranty</u>" and that, thereafter, Tesla would charge $35 per treatment, which would be necessary to perform periodically.

51.     On or around that same time, Sasso received a solicitation email from Tesla inviting him to "upgrade" his Touchscreen for a charge of $2,500.00, although on information and belief, the total diminished value far exceeds $2,500.00.[12]

52.     On information and belief, at all times, Plaintiffs used and operated the Vehicle properly and in compliance with the warranty. At no time did Plaintiff abuse, neglect, or tamper with the Vehicle.

53.     To date, the Defect remains uncured and substantially impairs the value of the Vehicle.

54.     Given the Touchscreen's material and important role in the Vehicle, including to its functioning and its impressive aesthetic, Plaintiffs would not have paid the purchase price for the Vehicle had the Defect been disclosed or had it been expressly excluded from the warranty.

**B.      <u>Industry Standards over Automotive-Grade Electronics</u>**

55.     The Automotive Electronics Council ("**AEC**") Component Technical Committee ("**Committee**") is a body responsible for establishing standards for reliable, high-quality electronic components across the automotive industry. It was originally established by Chrysler,

---

[12] Exhibit I.

Ford, and GM for the purpose of establishing common part-qualification and quality-system standards.[13]

56.    Components meeting the AEC's standards are generally considered by the merchants of the industry to be suitable for use in the harsh automotive environment without additional component-level qualification testing.

57.    The AEC conducts stress-test qualifications for passive components and integrated circuits which are contained in products such as the Innolux G170J1 (the Touchscreens at issue in this case) among other products. These tests categorize component types into five different grades: Grade 0 through Grade 4 (with Grade 0 being the most resilient to temperature extremes and Grade 4 being the least).

58.    For example, a Grade 4 component has a maximum temperature range of 70 degrees Celsius; the Committee describes a typical application of this type of component as "Non-automotive."[14] A Grade 3 component has a maximum temperature range of 85 degrees Celsius; the Committee describes a typical application of this type of component as for "Most passenger compartment[s]."[15] A Grade 2 component has a maximum temperature range of 105 degrees Celsius; the Committee describes a typical application of this type of component as for "Passenger compartment <u>hot spots</u>."[16] (Emphasis added).

---

[13] From its inception, the AEC has consisted of two Committees: the Quality Systems Committee and the Component Technical Committee. Today, the committees comprise representatives from the Sustaining Members (currently Aptiv, Bose Corporation, Continental Corporation, Cummins, Delphi Technologies, Denso International America, Gentex Corporation, Harman, Hella, John Deere Electronics Solutions (Phoenix International), Kostal Automotive, Lear Corporation, Magna Electronics, Sirius XM, Valeo, Veoneer, Visteon Corporation and ZF) and other Technical, Associate, and Guest Members.
[14] Exhibit J, page 6.
[15] Id.
[16] Id.

59.     As those standards would apply in this case, the Touchscreens at issue would have to meet Grade 2: the general ambient temperature inside the passenger compartment demands the Touchscreens withstand at least Grade 3 temperatures, but in addition, Tesla situates the Touchscreens such that the ordinary conditions to which they would be subject constitute a "hot spot." For example, the Touchscreens are situated underneath the windshield and all-glass roof, upwardly-facing and angled toward the sun, and they are adjacent to the vehicle's heating system, autopilot processor, display processor, and other heat-producing components.

60.     But according to the Innolux G170J1 Product Specifications,[17] the Touchscreens meet neither of those standards and fall squarely within the lowest grade designated for "non-automotive" components: Grade 4. The Innolux G170J1 Product Specifications explicitly rate the Touchscreens to a maximum Operating Ambient Temperature of 80 degrees Celsius and a maximum Storage Temperature of 90 degrees Celsius.[18]

61.     On information and belief, the Touchscreens' failure to meet these thermal standards is the originating cause of the "yellow band" constituting the Defect, and ultimately, a defect implicating each vehicle's lack of fitness for its ordinary purpose.

**C.      Nationwide Complaints of the "Yellow Band Defect"**

62.     As a result, the Defect has been incurred by Tesla's consumers broadly. As one would expect, it is a common complaint on Tesla forums.

63.     On one forum thread entitled *"Yellow Screen? Force Tesla to Replace it!,"* at least 1,532 posts have been made on that thread alone.[19] A sampling of posts from various forums include:

---

[17] Exhibit K.
[18] Exhibit K, page 5.
[19] Available at: https://www.teslamotorsclub.com/ (last visited February 5, 2020).

a.  Posted by "docbrown" on May 13, 2018[20]:

**Mobile service ended up coming out on Saturday, but telling me that they are no longer replacing the screens. He said that they've found that the new screens still have the same problem. He also said that I could have the screen replaced if I paid for it. So he ended up just doing a 'courtesy inspection' of my vehicle.**

b.  Posted by "flyinghawaiian" on May 21, 2019[21]:

**I had an appointment a few days ago after getting a text saying the screen was in. 30 minutes prior to the appointment they called and said they're canceling the appointment because Tesla engineers have told them not to replace anymore screens and that they're working on a firmware to fix it. I told them that didn't make any sense. They said there's nothing they can do about it at the moment because of the Tesla halting screen replacements.**

c.  Posted by "PhilDavid" on June 6, 2019[22]:

**The screen is what defines the Model S interior and the one thing you use every moment you are in the car.**

**No mater what they may say, it is obvious that this a manufacturing defect and I don't buy any nonsense about the defective screens not affecting "functionality." It certainly does affect functionality when the screens are no longer able to display certain colors. This needs to be resolved under warranty with a clear screen. It seems this is the direction they are going by asking customers to wait for the clear displays to be available.**

d.  Posted by "PhilDavid" on July 2, 2019[23]:

---

[20]    Available at: https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-3 (last visited February 5, 2021).

[21]    Available at: https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-3 (last visited February 5, 2021).

[22]   Available at: https://teslamotorsclub.com/tmc/threads/yellow-bands-of-death-can-disable-some-touchscreen-controls.154026/page-5(last visited February 5, 2021).

[23]   Available at: https://teslamotorsclub.com/tmc/threads/yellow-bands-of-death-can-disable-some-touchscreen-controls.154026/page-5(last visited February 5, 2021).

It's this "cosmetic issue" response that I am most upset about. It's as if it's news the the car would be in an environment with sunshine and temperature variances. I can't imagine even the sh!ttiest car dealer or automaker invoking a "cosmetic issue" clause to try and get out of a warranty remedy for a defective a part.

If your chrome trim turns yellow in 6 months would you buy the argument that it is just a "cosmetic issue" and should not be replaced?!

e.  Posted by "corman" on April 8, 2019[24]:

Except its clearly defective. They can't give substandard parts known to have a defect and not replace it out of warranty. Tesla should stick this on their supplier and so they aren't harmed by replacing out defective screens.

f.  Posted by "docbrown" on April 26, 2019[25]:

My July 2018 S75D MCU2 just started yellow bordering. I went ahead and made an appointment via the app, 2 weeks out... Just got this text:

Hello from Tesla Service. We received your request for a service appointment. We have procured a new supplier for the screen replacements due to the yellowing concern. They have not provided the new parts to our service centers yet. We will record your concern and our Mobile Team will reach out to you to schedule a visit at your location to replace the screen when the parts are available (expected by late Summer 2019). Thank you.

g.  Posted by "RV8R" on May 30, 2019[26]:

I had a mobile service yesterday regarding door alignment, and had also indicated a yellowing screen. The techs said they are not replacing the screens but have now found a 'light' process for reversing the yellowing. It is

---

[24]    Available     at:     https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/(last visited February 5, 2021).
[25]    Available     at:     https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-2(last visited February 5, 2021).
[26]    Available     at:     https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-4 (last visited February 5, 2021).

still in development but they expect the be issuing a mobile device to reverse the yellowing without replacement. We'll see.

h.  Posted by "morepower" on May 14, 2019[27]:

I had an appointment last Friday. I received a text a few days before the appointment that the part was in. When I showed up for my appointment they said they did not have the part and would be the end of summer. I am glad I only live about 12 miles from the Service Center as I would have been really pissed if I had driven hours to get that news. If they truly are not going to replace the screen I would think a class action suit is coming in the near future.

i.  Posted by "eyeq123" on June 17, 2019[28]:

Went a second time tin ask when they can replace my screen. Appointment scheduled for 6/19. They texted me today saying: "Hi, we are reaching out from Tesla. We wanted to let you know that the touchscreen yellowing will be resolved in the near future. We have a tool that is being released across the US to correct this. Unfortunately, it has not yet reached the East Coast. That being said, once released they will contact you to removed the yellowing. If there are no other issues at this time I can go ahead and cancel your appointment, please let me know. Thank you!"

j.  Posted by "buzescu" on July 20, 2019[29]:

I got this Hitoday via SMS:

Hi this is the Tesla Service Team. Tesla has reviewed the issue with the yellow anomalies on the touchscreens and determined two courses of action to correct them. Our team is developing a procedure to correct the yellowing and "revive" the display. There will be no cost associated

[27]  Available at: https://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-3 (last visited February 5, 2021).

[28]  Available at: hhttps://teslamotorsclub.com/tmc/threads/yellow-border-need-advise.147605/page-4 (last visited February 5, 2021).

[29]  Available at: https://teslamotorsclub.com/tmc/threads/yellow-screen-force-tesla-to-replace-it.158197/page-10#post-3851348 (last visited on February 5, 2021).

**with this procedure while the vehicle is under warranty or if the issue is noted prior to the limited warranty expiring. This revive procedure will be available early Fall. The second option is a replacement of the touchscreen with an updated revision that will resist any yellowing. As there will be a procedure to address the issue and the function of the screen is not affected, the replacement option is not covered by the vehicle's warranty. Let us know which direction you would prefer to go so we can adjust your appointment as such. Thank you!**

k.  Posted by "jwlsh" on July 24, 2019[30]:

**Got this email from Customer Service today:**

**"Thank you for contacting Tesla! Please allow me to apologize for the delay in our response to this email. Some owners have shared concerns regarding a yellow border forming around the edges of the touchscreen. Tesla has reviewed these cases and determined this is a wear and cosmetic condition, which has no impact on performance, function, or reliability of the touchscreen. Therefore this is not a defect and Tesla has no obligation to replace the touchscreen under warranty. However, Tesla is in the process of releasing a procedure which uses ultraviolet light to reduce the yellowing condition. More information will be available soon regarding this procedure. Alternatively, owners may pay to replace the touchscreen with the latest revision that is not susceptible to this condition.**
**For any additional questions you have regarding this process, your local Service Team will be able to best assist you."**

## IV.  Allegations Pertaining to Tesla's "Warranty Scheme"

### A.  Plaintiff's Representative Experience

64.  Telsa's Motor Vehicle Purchase Agreement, version 20151020 en_US, states "You

will receive the Tesla New Vehicle Limited Warranty at or prior to the time of Vehicle delivery.

---

[30]  Available at: https://teslamotorsclub.com/tmc/threads/yellow-screen-force-tesla-to-replace-it.158197/page-12 (last visited on February 5, 2021).

You may also obtain a written copy of such warranty from us upon request or download it from your MyTesla account."

65.　At no time did Tesla provide the applicable 2016 warranty to Plaintiffs — neither at the time of delivery, nor prior; nor at any time thereafter.

66.　On various occasions, Sasso followed Tesla's directions to obtain a copy of the warranty. In doing so, however, Sasso found that the warranty provided on his account was an ever-changing and ever-evolving document. For instance, as of February 5, 2020, Sasso logged on and attempted to download his warranty through the link provided on his MyTesla account. The document produced however — supposedly a warranty covering his 2016 Vehicle — was in fact a warranty with an effective date of Jan 29, 2020.[31] As Sasso would come to learn, that warranty instrument contained substantially fewer rights than the warranty he purchased.

67.　On February 6, 2020, Sasso requested the warranty via an online chat with Tesla. The Tesla representative stated, "Unfortunately, we do not have the ability to send out this documentation through Vehicle Support. **We can see it, but it's locked down for security reasons**. The best way for you to obtain the physical copy would be to contact your local Service Center. They would be able to print this document out for you." (Emphasis added).

68.　On February 6, 2020, Sasso emailed Tiffany Correa, the Service Manager of the Raleigh Service Center, and Thomas Ian Ball, a Raleigh Service Center advisor. Neither Correa nor Ball replied.

69.　On February 7, 2020, Sasso called Tesla's Raleigh Service Center and spoke with Aaron Jones. Sasso requested his 2016 warranty, and the following conversation ensued:

---

[31] Exhibit L.

[Jones:] "The warranty constantly is updated. It just means that the 'effective date' was January 29, 2020, it's still applicable to the 2016."

[Sasso:] "But is it possible to get a copy of the warranty when I bought the car?

[Jones:] "I can try to do some Google searching. **I know on Tesla's side, since we're constantly updating the warranty, it's just whatever is current right now."**

**[Sasso:] So you're saying that the current warranty will apply to my car, not the warranty that came with the car in 2016."**

**[Jones:] Correct. Yeah, we're constantly running into new things so we're updating the warranty just about every quarter.**

**[Sasso:] What if something was covered back in 2016, and it's not covered now?**

**[Jones:] Then it would still fall under the 2020 warranty guidelines.**

[Sasso:] Alright. So there's no way to get a copy of the 2016 warranty?

[Jones:] Not from MyTesla's side. [] It might be in your Owner's Manual or it might be something we could Google around and try to find, but from the official side it would just be the updated one from January 29.

[Sasso:] See I contacted Tesla Support, and they said, 'we're unable to send you a copy of the warranty. Contact the Raleigh Service Center, and they will be able to send it to you."

[Jones:] Gotcha. Sorry about that.

70.     On February 10, 2020, Plaintiff emailed Correa again. Correa finally replied apologizing for the delay and directed Sasso to communicate with Aaron Jones. Sasso responded, "I spoke to Aaron on the phone after communicating with Tesla support. Tesla Support told me that the Raleigh Service Center could send me the warranty. Aaron told me that Tesla does not

have a copy of my 2016 Model S warranty, only the 2020 version. Is that true?" Correa never replied.

71.      On February 11, 2020, Plaintiff sent a letter to Tesla's headquarters demanding his warranty via Certified Mail, return receipt requested, requesting his warranty. The letter was received by Tesla on February 18, 2020 and was signed for by "Craig Williams." Tesla never replied.

72.      On July 14, 2020, Plaintiff requested a copy of his warranty again via text message to "Drew" at the Raleigh Service Center. Plaintiff received no reply.

73.      Having exhausted all other means, Sasso resorted to the advice of Aaron Jones — to "Google around" for it. In doing so, Sasso discovered that Jones was right: Tesla indeed updates its warranty virtually every quarter. And it is Tesla's ongoing policy and practice to apply its updated warranty against prior consumers without informing them, without their consent, and without granting any consideration in exchange for the reduced rights.

74.      A broad internet search, including across archive databases, consumer forums, and other resources, as well as a warranty provided by Tesla since the filing of this lawsuit, revealed that determining a Tesla consumer's true warranty rights is all but impossible: (a) there is no location at which to access or download any specific warranty; (b) there is no mode to confirm any given warranty's application to any specific purchase (including on the terms of the warranty itself); (c) Tesla has in circulation at least six different warranty variations[32] explicitly purporting to cover the same vehicles across time[33]; and (d) Tesla promises ongoing access to the warranty (lulling the consumer into inaction) and providing no indication that it would ever close its window of access.

---

[32] Exhibit L; Exhibit M; Exhibit N; Exhibit O; Exhibit P; Exhibit Q.
[33] *See e.g.* Exhibit O, page 1 ("This version of the warranty is applicable to your vehicle and supersedes any other versions published online or in print."); *see also e.g.* Exhibit N, page 2 ("THIS

75.     A comparison of each discovered warranty document reveals that each variation incorporates incremental changes to the prior warranty document; each change effecting an incremental and unilateral reduction of the consumer's rights. Across the variations, the deceptive and concealed changes include but are not limited to:

| Reductions to Consumer's Rights | Additions to Consumer's Rights |
|---|---|
| • Tesla removed coverage clauses[34]<br>• Tesla added discretionary remedy clauses[35]<br>• Tesla added limitations and exclusions clauses[36]<br>• Tesla added arbitration clauses[37]<br>• Tesla added voidability and compliance clauses[38] | |

76.     In no variation were the consumer's rights expanded. Tesla implemented each change without disclosure to the consumer, without consent by the consumer, and without supporting consideration granted in exchange. At no time could any of Tesla's warranty variations

_____

NEW VEHICLE LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY MADE IN CONNECTION WITH YOUR TESLA VEHICLE.").

[34] *Cf e.g.* Exhibit N, page 5 *and* Exhibit M, page 6 (narrowing of warranty rights pertaining to body rust); *Cf also e.g.* Exhibit Q, page 40 *and* Exhibit M, page 5 (replacing "unlimited miles" coverage of Battery and Drive Unit with "150,000 miles" coverage of Battery and Drive Unit). *See also* Exhibit R (Elon Musk blog post advertising "infinite mile warranty").

[35] *Cf e.g.* Exhibit Q, page 38 *and* Exhibit P, page 2 (adding Tesla's right to use "reconditioned" parts); *Cf also e.g.* Exhibit Q, page 38 *and* Exhibit O, page 2 (adding Tesla's right to use "reconditioned" parts).

[36] *Cf e.g.* Exhibit N, page 6 *and* Exhibit M, page 7 (addition of limitation/exclusion for thunderstorms); *Cf also e.g.* Exhibit N, page 7 *and* Exhibit M, page 8 (addition of limitation/exclusion for "Minor adjustments, including addition of sealant, insulation, or replacing and/or re-torquing of nuts and bolts (or the like).").

[37] *Cf e.g.* Exhibit Q, page 39 and 45 *and* Exhibit N, page 3 and pages 12-13 (addition of arbitration clause).

[38] *Cf e.g.* Exhibit N, page 5 *and* Exhibit M, page 6 (addition of voidability for failure to follow "recommended battery maintenance"); *Cf also e.g.* Exhibit Q, page 41 *and* Exhibit L, page 9 (addition of voidability for failing to "Install[] the vehicles software updates after notification that there is an update available.").

be validly construed as retrospective modifications, as none were ever disclosed, consented to, or supported by consideration.

77.     Each new warranty version implicates a reduction in value of that warranty in comparison to its prior version, and each change inflicts various forms of injury upon consumers including but not limited to:

> a.   The value lost to each consumer by virtue of Tesla's deprivation from each consumer of their complete warranty instrument containing the full set of rights; and in the alternative

> b.   The incremental value lost to each consumer consequential to each incrementally removed right; and

> c.   The value lost to the consumer due to the deprivation of access by the consumer to the warranty instrument and the rights contained.

78.     Tesla unjustly benefitted in many ways through its deceptive Warranty Scheme by *inter alia* avoiding warranty claims by consumers unjustly relying on the reduced warranty rights, by denying warranty claims that were excluded under the new terms but included under the old, and by voiding warranties on the basis of added voidability and consumer-compliance clauses.

79.     Tesla's written warranty — like any written warranty — is an instrument containing legal rights constituting a thing of value; Tesla deprived Sasso and all other class members of that value by withholding those rights, misrepresenting "updated" rights, concealing the consumers' true rights, and ultimately, by making it — Tesla itself — the sole knower and arbiter of its warranty coverage.

80.     On information and belief, Tesla engaged in this conscious strategy as a way to avoid significant financial exposure to warranty claims; a strategy tantamount to the willful and

wanton disregard of consumers' rights, and the purposeful exclusion of each Tesla consumer from the benefits of his bargain. Specifically, it is Tesla's pattern and practice to promise online access to each consumer's warranty, but then to identify covered defects over time, update the warranty terms to exclude certain defects, silently replace the warranty, and then deny future warranty claims for the previously covered (but now allegedly not-covered) defect.

81. At the time of filing of the original Complaint in this action, Tesla had failed to honor its promise to provide Plaintiffs with the Vehicle's warranty; that failed promise itself constituted another breached written warranty.

82. The warranty to the Vehicle, and Tesla's promise to provide access to it, both constitute independently and distinctly material terms to the Plaintiffs' purchase. But for those terms, Plaintiffs would not have paid the purchase price for the Vehicle. As a proximate consequence to the unavailability of the warranty, Plaintiffs suffer from the substantial impairment of the Vehicle's value.

**B.    Nationwide Complaints of Tesla's Deceptive Practices**

83. Tesla's Warranty Scheme has been incurred by Tesla's consumers broadly. Accordingly, it is a common complaint on Tesla forums.

84. On one forum thread entitled "*Is Tesla changing warranty terms again, reducing coverage retroactively?*,"[39] over 151 post have been made on that thread alone. A sampling of various posts from various forums include:

   a.   Posted by "Akikiki" on December 9, 2019[40]:

---

[39] Accessible at: https://www.teslamotorsclub.com/ (last visited February 5, 2021).
[40] Available at: https://teslamotorsclub.com/tmc/threads/is-tesla-changing-warranty-terms-again-reducing-coverage-retroactively-website-error.176671/page-3 (last visited February 5, 2021).

**Yep, they changed mine for my '17 90D. It was 8 years and unlimited miles. Now its 8 years and 120,000 miles. I didn't get a memo warning.**

      b.  Posted by "Fredneck" on December 7, 2019[41]:

**…I checked my car and it now says my driveline warranty is only for 120,000 miles. I sent a message, but the options of who to send that to are limited to the various sales organizations. Going down the rabbit hole of contacting "support" only takes me to a page with some recommended reading. If the 800 number is going to push you off to the web site to contact someone, why don't they make that a little more obvious how to do that? Am I missing something?**

      c.  Posted by "albertvillescas_98513896" on February, 2020[42]:

**I[t] looks like Tesla made a change to the warranty of all of the existing Tesla cars including the X. One of the reasons I chose the X over the 3 was the 8 year unlimited mile warranty. This was the logical choice due to the amount of driving that I do. I consider the warranty to be part of the value of the car. It sounds like all cars including ones already owned will have their warranties reduced.**

**How can this be allowed?**

      d.  Posted by "cranch" on August 19, 2018[43]:

**From the link on the main site all model S cars other than a select few older S60s should have an 8-yr/unlimited mile battery warranty on them. In the past few days the website is now showing 5-year/unlimited miles. Anyone else seeing this?**

---

[41] Available at: https://teslamotorsclub.com/tmc/threads/is-tesla-changing-warranty-terms-again-reducing-coverage-retroactively-website-error.176671/#post-4274934 (last visited February 5, 2021).

[42] Available at: https://forums.tesla.com/discussion/comment/1973244#Comment_1973244 (last visited February 5, 2021).

[43] Available at: https://teslamotorsclub.com/tmc/threads/cpo-warranty-change.126226/#post-2966215 (last visited February 5, 2021).

e. Posted by "whitex" on August 22, 2019[44]:

**One lesson everyone who is buying anything Tesla should learn very quickly, always save screenshots of anything important, order details, specifications, feature descriptions, warranty details, etc. Tesla has developed a habit of changing things and then pretending it was like that before. They recently changed warranty coverage (e.g. not covering screens anymore - they are now wear and tear item like your tires), and transferable supercharging (Tesla is stripping supercharging from cars they do not own when they are sold, even the cars were sold with transferable supercharging attached to a car - they even changed the UI so it no longer tells you whether your free supercharging is transferable or not). Elon is taking "car salesman" reputation to a whole new level.**

f. Posted by "Flyguy" on August 26, 2019[45]:

**This is very concerning. My four year ESA I purchased when I bought my car new no longer exists in my account. All of those documents used to be accessible in my account, and now they are gone. I am kicking myself for not downloading them.**

**I assume this problem is extensive, and they will correct it soon?!**

g. Posted by "MSVroomVroom" on August 13, 2019[46]:

**Does anyone have PDFs of older revisions to the Tesla New Vehicle Limited Warranty? I can download the Feb 1 2019 revision from the Tesla website but I can't find any older copies.**

**I don't really like that Tesla only makes the latest copy available on their website (as far as I can find).**

---

[44] Available at: https://teslamotorsclub.com/tmc/threads/warranty-coverage-suddenly-changed.163604/#post-3947410 (last visited February 5, 2021).
[45] Available at: https://teslamotorsclub.com/tmc/threads/warranty-coverage-suddenly-changed.163604/page-2 (last visited February 5, 2021).
[46] Available at: https://teslamotorsclub.com/tmc/threads/tesla-warranty-versions.162617/ (last visited February 5, 2021).

h. Posted by "trm2" on December 16, 2019[47]:

**Not quite. My link goes to the warranty that was for vehicles starting in February this year. That is very different from the warranty for my car that I got at the end of 2017. Thankfully I downloaded a copy of the warranty for my car.**

## V.    <u>Tolling of the Statute of Limitations and Estoppel</u>

85.    Any applicable statute of limitations has been tolled by Tesla's knowing and active concealment of the Defect, and by Tesla's policy of withholding and concealing its consumers' warranty rights, and by Tesla's policy of inducing consumers into inaction through knowingly false promises of future solutions and other misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the classes were deceived and could not reasonably seek a proper remedy to the Defect or Tesla's deception with respect to the Defect. Tesla continues to deny the existence and extent of the Defect, and demonstrates a policy of ignoring and withholding consumers' requests for the applicable warranty.

86.    Plaintiffs and members of the classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Tesla was concealing a defect and/or that the Vehicles contained the Defect and the corresponding diminution of value to each vehicle and its attached warranty. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the classes could not have discovered, through the exercise of reasonable diligence, the existence of the Defect or that Tesla was concealing the true nature of

---

[47]    Available at: https://teslamotorsclub.com/tmc/threads/tesla-warranty-versions.162617/ (last visited February 5, 2021).

the Defect and the warranty rights pursuant to which the class members were to find their cause of action.

87.     At all times, Tesla was and is under a continuous duty to disclose to Plaintiffs and members of the classes each consumer's true warranty rights, and the true standard, quality and grade of the Vehicles and to disclose the Defect and any corresponding safety risks due to their exclusive and superior knowledge of the existence and extent of the Defect in the Vehicles.

88.     Tesla knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the classes reasonably relied on Tesla's knowing, active, and affirmative concealment.

89.     Because Tesla failed to provide its consumers with the terms of their warranty instruments, and thereby failed to adequately or conspicuously disclose the limitations and exclusions to its warranty, Tesla should be estopped from using those limitations and exclusions against its consumers.

90.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Tesla's fraudulent concealment, and Tesla is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs brings this lawsuit, both on behalf of themselves and as a class action on behalf of similarly-situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3) and seeks to represent the following classes, defined as:

    a.   **Nationwide Class of Victims of the "Yellow Band Defect"**

        i.   All Tesla owners and lessees of Tesla vehicles containing Innolux brand Touchscreens.

b. **Nationwide Class of Victims of Tesla's "Warranty Scheme"**

        i.  All Tesla owners and lessees of Tesla vehicles purchased or leased within the United States of America.

92.     In the alternative, Plaintiffs bring this action as a class action on behalf of the following sub-classes for the purposes of Plaintiffs' respective state law claims, defined as:

a. **North Carolina Sub-Class of Victims of the "Yellow Band Defect"**

        i.  All Tesla owners and lessees of Tesla vehicles containing Innolux brand Touchscreens within North Carolina.

b. **North Carolina Sub-Class of Victims of Tesla's "Warranty Scheme"**

        i.  All Tesla owners and lessees of Tesla vehicles purchased or leased within North Carolina.

93.     **Numerosity/Impracticability of Joinder:** There are so many members of the classes that joinder of all members is impracticable. Through 2020, Tesla has sold over 1.3 million vehicles, all of which were subject to the Warranty Scheme and, upon information and belief, a majority subset of which contain the Yellow Band Defect. Accordingly, Plaintiff estimates that there are hundreds of thousands of members in each class who are readily identifiable from information and records in Tesla's possession, custody, or control. The disposition of these claims will provide substantial benefits to the members of the classes.

94.     **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the classes. These common legal and factual questions, which do not vary from members within the respective classes, and which may be determined without reference to

the individual circumstances of any members of the classes, include, but are not limited, to the following:

    a.   Common and predominant questions across the members of the Yellow Band Defect Classes:

        i.   whether the Yellow Band Defect is covered by Tesla's express and/or the implied warranties;

        ii.   whether the Yellow Band Defect is a defect inherent to all Tesla Touchscreens;

        iii.   whether Tesla's failure to cure the Yellow Band Defect violated express and/or the implied warranties;

        iv.   whether, and in what amount, the Yellow Band Defect implicates a diminished value of its contained vehicle;

        v.   whether Tesla concealed or misrepresented facts about the quality and merchantability of its vehicles and/or touchscreens;

        vi.   whether Tesla's policies and representations constitute an unfair or deceptive practice.

        vii.   whether Tesla knew, or should have known, that its representations were false, or that the representations omitted material information;

        viii.   whether the Yellow Band Defect and/or its cause affects consumer or public safety;

        ix.   whether Tesla had a duty to disclose, and failed to disclose, the Yellow Band Defect; and

x. whether Tesla's policies, customs, or practices were performed in an aggravated manner or were accompanied by willful deception, bad faith, fraud, malice, and willful and wanton conduct and justifying of punitive damages.

b. Common and predominant questions across the members of Tesla's Warranty Scheme Classes:

i. whether it was Tesla's policy, custom, or practice to engage in the aforementioned Warranty Scheme of (a) updating its warranty, (b) representing the updates as retroactively binding, (c) concealing and/or failing to disclose, obtain consent to, or exchange consideration for the updates, and (d) enforcing the updates.

ii. whether the Warranty Scheme constitutes a breach of Tesla's express and/or the implied warranties, an unfair or deceptive trade practice, a breach of Tesla's duty of good faith and fair dealing, a violation of the Magnuson-Moss Warranty Act, or willful and wonton conduct in disregard of the consumer's rights.

iii. whether a preliminary and permanent injunction should be entered to prohibit Tesla from engaging in the Warranty Scheme;

iv. whether, and in what amount, the Warranty Scheme implicates a diminished value of the warranty as a legal instrument itself and/or the vehicle to which it is attached;

     v.   whether Tesla lulled its consumers into inaction through its promise to make the consumers' warranty available upon request and without limitation;

    vi.   whether, and in what amount, the consumer's access to its warranty is worth value;

   vii.   whether Tesla unjustly suppressed valid warranty claims, and ultimately profited, as a consequence of its policies and conduct; and

  viii.   whether it was Tesla's knowing and willful policy, custom, or practice to engage in the Warranty Scheme and/or violate its promise to hold the consumer's warranty available.

95.    **Typicality and Adequacy:** Plaintiff's claims are typical of the claims of the proposed classes, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed classes. Plaintiffs do not have any interests antagonistic to those of their respective classes. Plaintiffs' counsel are capable attorneys who are prepared to handle the litigation. The questions of law and fact common to the members of the classes, some of which are set forth above, predominate over any questions affecting only individual members of the classes.

96.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the classes to prosecute their claims individually. The litigation and trial of the class-wide claims are manageable.

97.    Unless the classes are certified, Tesla will improperly retain monies that it received from Plaintiffs and members of the classes as a result of its conduct. Unless Tesla is required to change its unfair and deceptive practices, it will continue to commit the violations and schemes

described, and the members of the classes and the general public will continue to be deceived and harmed.

98.    Tesla has acted and/or has refused to act on grounds generally applicable to the classes, making final injunctive relief with respect to the classes as a whole appropriate.

## COUNT I
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### N.C.G.S. § 25-2-314, *ET SEQ.*

99.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.    15 U.S.C. § 2308, the Magnuson-Moss Warranty Act, prohibits a supplier from disclaiming implied warranties in the presence of a written warranty.

101.    Tesla is a merchant and supplier of vehicles that makes written warranties covering its vehicles.

102.    Certain warranties are implied as a matter of law, including *inter alia* that the Vehicle was of fair average quality within the description; that the Vehicle was fit for the ordinary purposes for which such goods are used; and that the Vehicle would conform to the promises or affirmations of fact made on the advertising stickers, marketing materials, etc.

103.    The Vehicle failed to conform with those warranties by virtue of its Touchscreen being defective.

104.    Plaintiff has given Tesla reasonable opportunity to cure the Defect in non-conformance with these warranties.

105.    Tesla has failed to cure the Defect within a reasonable time.

106.    As an actual and proximate result of the Defect, and Tesla's failure to cure it, Plaintiffs have suffered injury and incurred damages.

## COUNT II
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201(A); F.R.C.P 57; F.R.C.P. 23(B)(2)

107.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108.    In Tesla's Terms and Conditions contained within its Motor Vehicle Purchase Agreement, Tesla promised and warranted to Plaintiff and each of the other putative class members: "<u>You will receive the Tesla Motors New Vehicle Limited Warranty at or prior to the time of Vehicle delivery. You may also obtain a written copy of such warranty from us upon request or download it from your MyTesla account</u>."

109.    Additionally, and alternative, Tesla, the provider of the warranty purchased by its consumers, had at all times the implied obligation to provide said warranty in each warranty's true and accurate form.

110.    Plaintiff and fellow putative class members are at the ongoing risk of Tesla depriving access to and limiting the ability to exercise the warranty and the warranty rights by failing to provide their warranty and by instead providing them with a modified and continuously changing document and holding that document out as their actual warranty.

111.    Plaintiff, on its own behalf and on that of the fellow putative class members, seeks a declaration that (1) a warranty is a static item of value constituting personal property, the withholding of which, or in the alternative, the modification of which without disclosure, consent, or consideration in exchange, amounts to the conversion and/or devaluation of that personal property; (2) that Tesla's warranty practices (i.e. the "Warranty Scheme" described herein) do not comply with its explicit and/or implicit obligations to provide the warranty "at or prior to the time of Vehicle delivery" and to hold it available for download or upon request; and (3) that to comply

with its explicit and implicit obligations, Tesla must implement changes to its system and practices, including but not limited to:

a. Order that Tesla provide to each class member a hard copy of their warranty;

b. Order that Tesla provide to each class member for download a static copy of their warranty in its true and accurate form through their MyTesla account;

c. Enjoin Tesla from misrepresenting to any class member, through its personalized MyTesla account or by any other means express or implied, the class member's warranty terms or the applicability of the warranty version.

d. Engage a third-party administrator for all warranty claims, inquiries, and repair requests made by the putative class members during their respective warranty periods for the purpose of auditing for wrongfully denied claims.

e. Order that Tesla maintain an internal database identifying for each Tesla VIN number the applicable warranty version, the applicable warranty terms, the applicable beginning date and expiration date, along with a static version of that vehicle's warranty.

f. Order that Tesla disclose all modifications to the terms of its warranties over time online such that prospective buyers and sellers of Tesla vehicles are clearly able to determine what version of warranty applies to any Tesla vehicle.

g. Order that Tesla routinely and continually conduct internal training and education to inform Tesla Service Center personnel how to identify and apply warranty claims correctly and pursuant to the proper warranty terms across Tesla's different warranty versions.

## COUNT III
## VIOLATION OF THE NORTH CAROLINA UNFAIR TRADE PRACTICES ACT
## N.C.G.S. § 75-1.1, *ET SEQ*.

112.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113.   Defendant is in the business of selling vehicles to consumers.

114.   Defendant violated N.C.G.S. § 75-1.1 by committing the following unfair and deceptive acts and practices:

   a.   The sale of the Vehicle to Plaintiff under the guise that it was free from defects that would substantially impair the use, safety, or value of the Vehicle, which was accompanied by the aggravating factor that Tesla knew of, and consciously failed to disclose, the existence of the Yellow Band Defect at the time it marketed and transacted with the class members.

   b.   The failure of Tesla to honor its warranty, which was accompanied by the aggravating factor that it did so willfully and deceptively for the purpose of reducing its warranty liabilities in lieu of value owed to the consumers, and with the effect of usurping and converting the value Tesla consumers paid for.

   c.   The affirmative withholding of the consumer's applicable warranty, which was accompanied by the aggravating factor that Tesla consciously avoided producing the warranty as demonstrated by the fruitless wild-goose chase on which Tesla sent Plaintiff.

   d.   The swapping and misrepresenting of the class members' warranty documents with materially differing warranty terms to the unilateral detriment of the consumers' rights, which was accompanied by the aggravating factor that Tesla

affirmatively misrepresented to its consumers without disclosure, consent, or consideration in exchange, that the new, more-limited, terms "supercedes [*sic*] any other version..."

e.  Tesla misapplying the warranty in fact — a practice distinct from its misrepresentations — which was accompanied by the aggravating factor that it was Tesla's conscious policy to apply its most recent warranty variation to any and all claims, regardless of the consumer and regardless of the warranty purchased.

115.  Defendant's acts and practices were in and affecting commerce.

116.  Defendant violated the law willfully and knowingly.

117.  As an actual and proximate result, Plaintiffs suffered injury.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**N.C.G.S. § 25-2-313, *ET SEQ*.**

118.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119.  In connection with the purchase, Defendant expressly warranted that, *inter alia*:

a.  The consumer's warranty would be held available on an ongoing bases without limitation.

b.  The Vehicle's applicable warranty would be made available to Plaintiff via Tesla's Online Portal and upon request;

c.  The Vehicle was fit for the ordinary purposes of safe, reliable, and attractive transportation;

d.  The Vehicle was of good, sound, and merchantable quality;

e. The Vehicle was free from defective parts and workmanship;

f. The Vehicle was so engineered and designed as to function without requiring unreasonable maintenance and repairs;

g. In the event that the Vehicle was not free from defective parts or workmanship as set forth above, Tesla would repair or replace the same without cost to Plaintiffs; and

h. Any defects or nonconformities would be cured within a reasonable time.

120. Defendant breached these express warranties in that the Vehicle Defect persists and Defendant refuses to cure it.

121. Plaintiff has given Defendant reasonable opportunities to cure said Defect and make the subject Vehicle fit for its intended purpose, but Defendant has been unable and/or refused to do so within a reasonable time.

122. As a result of said nonconformities, Plaintiff cannot reasonably rely on the Vehicle for the ordinary purpose of safe, reliable, and attractive transportation.

123. As an actual and proximate result of the breach of express warranties, Plaintiff has suffered injury.

## COUNT V
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301 *ET SEQ.*

124. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

125. Plaintiffs and the members of the putative class are "consumer[s]" as defined in 15 U.S.C. § 2301(3).

126. Tesla is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) & (5).

127. The class vehicles are "consumer product[s]" as defined in 15 U.S.C. § 2301(1). 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

128. 15 U.S.C. § 2304(a)(1) requires Tesla, as a warrantor, to remedy any defect, malfunction, or nonconformity of the Vehicle within a reasonable time and without charge to Plaintiffs.

129. Plaintiffs made repeated demands of Tesla to cure the Yellow Band Defect and complied with all terms and conditions imposed by Tesla.

130. Tesla violated the Magnuson-Moss Warranty Act by committing the following acts:

a. By its failure to comply with Tesla's obligations under the applicable warranty;

b. By its failure to comply with its obligations under the Implied Warranty of Merchantability;

c. By its failure to comply with its express and implied obligation to preserve and hold available to consumers their warranties; and

d. By its circulating and unlawfully misrepresenting inapplicable warranty documents to its consumers.

e. By failing to disclose its warranty terms clearly and conspicuously and in simple and readily understandable language. (16 C.F.R. § 701.3(a)).

f. By effectively granting itself the sole authority to determine whether and when a defect or nonconformity exists within the scope of its warranty (15 U.S.C. § 2310(d); 16 C.F.R. § 700.8).

131.    As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time and without charge to Plaintiff, Plaintiff has suffered damages.

**COUNT VI**
**BREACH OF GOOD FAITH AND FAIR DEALING OBLIGATION**
**N.C.G.S. § 25-1-304, _ET SEQ_.**

132.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

133.    As further alleged herein, Defendant fraudulently concealed Plaintiff's Vehicle's warranty.

134.    The actions of Defendant as described in this Complaint constitute a breach of the good faith requirement and as a proximate result Plaintiff has sustained the damages.

**COUNT VII**
**PUNITIVE DAMAGES**
**N.C.G.S. § 1D-1, ET SEQ.**

135.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

136.    Defendant is liable for compensatory damages.

137.    Defendant's acts and practices, including its breaches of warranty, occurred in an aggravated manner accompanied by willful deception, bad faith, fraud, malice, and willful and wanton conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be awarded in Plaintiff's favor and against Defendant as follows:

   a.   Certification of the Nationwide Classes, or in the alternative, Statewide Sub-Classes defined herein;

b.   Appointment of Plaintiffs as representatives of the respective classes;

c.   A preliminary and permanent injunction to enjoin the Warranty Scheme and to engage in a corrective advertising campaign;

d.   A Declaratory Judgment declaring the rights of the parties as described here;

e.   Compensatory and other damages for economic and non-economic damages;

f.   An award of restitution and disgorgement of Tesla's unjust profits to Plaintiffs and the members of the proposed classes;

g.   Punitive damages and treble damages pursuant applicable law;

h.   An award of costs, including reasonable attorney's fees, in this action to the maximum extent allowable by law, along with interest at the highest legal rate from the date of the judgment to the date of payment in full; and

i.   Such other and further relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

This the 5th day of February 2021.

**Williams & Ray, PLLC:**

Brycen G. Williams
NC Bar No.: 50253
        Williams & Ray, PLLC
        555 Fayetteville St., Ste. 201
        Raleigh, NC 27601
        Phone: (888) 315-3841
        Fax:    (303) 502-5821
        Email: bw@williamsray.com
        *Attorneys for Plaintiff*

Plaintiffs' Addresses
Chad Sasso
104 Ravenhollow Court
Cary, NC 27518

The Challenge Printing Co. of the Carolinas, Inc.
5905 Clyde Rhyne Drive
Sanford, NC 27330-9508