IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-24-D

CHAD SASSO, and                          )
THE CHALLENGE PRINTING CO.               )
OF THE CAROLINAS, INC.,                  )
                                         )
                    Plaintiffs,          )
                                         )
          v.                             )          **ORDER**
                                         )
TESLA, INC.,                             )
                                         )
                    Defendant.           )

On December 15, 2020, Chad Sasso ("Sasso") and The Challenge Printing Co. of the

Carolinas, Inc. ("Challenge Printing") (collectively, "plaintiffs") filed suit in Wake County Superior

Court against Tesla, Inc. ("Tesla" or "defendant") arising from problems with a Tesla car plaintiffs

purchased [D.E. 1-1]. On January 15, 2021, Tesla removed the case to this court [D.E. 1]. On

February 5, 2021, plaintiffs filed an amended complaint with class allegations [D.E. 11]. They allege

state and federal law claims: (1) breach of the implied warranty of merchantability; (2) a claim for

a declaratory judgment; (3) violation of the North Carolina Unfair Trade Practices Act, N.C. Gen.

Stat. §§ 75-1.1, et seq.; (4) breach of express warranty; (5) violations of the Magnuson-Moss

Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq.; and (6) breach of the covenant of good faith

and fair dealing. See id. Plaintiffs seek compensatory damages, punitive damages, declaratory relief,

and injunctive relief. See id. On April 12, 2021, Tesla moved to dismiss plaintiffs' amended

complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [D.E. 16]. On June 7, 2021,

plaintiffs' responded in opposition [D.E. 22]. On July 6, 2021, Tesla replied [D.E. 25]. As

explained below, the court grants Tesla's motion to dismiss.

I.

Tesla manufactures electric cars. See Am. Compl. ¶ 12. Tesla does not sell its cars via traditional dealerships but instead sells them directly to consumers either online or at one of its showrooms. See id. ¶ 22. Each of Tesla's models from 2016 to 2020 includes a 17-inch touchscreen made by Innolux Corporation. See id. ¶¶ 15–16. The touchscreen controls many of the cars' features. See id. ¶ 19. For example, the touchscreen controls the interior lighting, door locks, child-protection locks, opening the trunk, the blind-spot warning system, the audio system, and the cars' climate control. See id. (listing these and more functions). According to plaintiffs, Tesla manufactured more than 1.2 million cars with the Innolux touchscreen between 2016 and 2020. See id. ¶ 21.

Sasso is a North Carolina citizen who owns and runs Challenge Printing. See id. ¶ 11. In 2016, Sasso placed an online order with Tesla on behalf of Challenge Printing to purchase a new 2016 Model S 60D. See id. ¶ 24. Sasso planned to use the car for company business. See id. The car cost $101,280, and plaintiffs also paid $13,900 for software upgrades, $4,264.68 for accessories, $550 for annual servicing, and paid to upfit Sasso's house with an at-home charging station. See id. ¶¶ 26–27. Apparently, Sasso and Challenge Printing split some of the ancillary costs, but it is unclear whether they split the cost of the car itself. See id. Plaintiffs do not allege whose name (Sasso or Challenge Printing) is on the car's title. Based on what Sasso alleges Tesla employees told him, Sasso believed the car came with a four-year warranty, and the purchase agreement Sasso received confirming the purchase said Sasso would receive the warranty when he received the car, if not before. See id. ¶¶ 28–30; [D.E. 11-6] 4. The purchase agreement also said Sasso could get a copy of the warranty upon request or could download it from the purchaser's online user account. See Am. Compl. ¶ 30; [D.E. 11-6] 4.

2

On December 15, 2016, Sasso picked up the car from Tesla. See Am. Compl. ¶ 31. No one gave Sasso a copy of the warranty when he picked up the car. See id. In June 2018, the touchscreen in the car began to malfunction by developing a yellow border around the edge of the screen. See id. ¶ 33. On July 3, 2018, Sasso took the car to a Tesla location, and Tesla replaced the touchscreen for free under the warranty. See id. ¶¶ 34–35. After six months, the problem returned. See id. ¶ 36. Sasso then tried several times to have Tesla fix the touchscreen, but each time, Tesla could not fix the screen because of equipment issues. See id. ¶¶ 37–54. Tesla then told plaintiffs the touchscreen defect can be mitigated but not fully fixed without upgrading the touchscreen for $2,500. See id. ¶¶ 50–51. Plaintiffs allege that the yellow border appears on the touchscreen because the touchscreen is poor quality and does not meet industry standards for the range of temperatures and exposure to sunlight cars endure when they are parked outside. See id. ¶¶ 55–61. Plaintiffs allege many Tesla owners have had similar problems. See id. ¶¶ 62–63.

Additionally, plaintiffs allege their car came with a New Vehicle Limited Warranty (the "warranty"). See id. ¶ 64. Tesla, however, allegedly never gave plaintiffs a copy of the warranty when they received the car (or at any time thereafter). See id. ¶ 65. Plaintiffs allege that when Sasso logged into plaintiffs' MyTesla online account, the warranty available online changed over time and that Tesla refused Sasso's requests to send a hard copy of the 2016 warranty. See id. ¶¶ 66–72. Sasso eventually found copies of the warranty online, but plaintiffs allege the various copies are all different and indicate a constantly changing document. See id. ¶¶ 73–77. According to plaintiffs, the alleged warranty changes diminish customers' warranty rights to Tesla's benefit. See id. ¶¶ 77–82.

## II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's

3

"statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 479 (4th Cir. 2005); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Tesla argues that Sasso lacks standing concerning all his claims and that both plaintiffs lack standing to assert their declaratory judgment claim.

## A.

Tesla contends that Sasso lacks standing. See [D.E. 17] 27–28. A plaintiff establishes standing by showing: (1) that the plaintiff has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed

4

to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)); see Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560; see Spokeo, 678 U.S. at 338. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claim. See, e.g., Lujan, 504 U.S. at 560–61; White Tail Park, 413 F.3d at 459.

Tesla argues Sasso does not have standing because Sasso has not suffered an injury in fact. See [D.E. 17] 27–28. The injury in fact requirement is the "first and foremost" of the standing requirements. Spokeo, 578 U.S. at 338 (cleaned up); see Steel Co., 523 U.S. at 103. To show injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). An injury is particularized when it affects the plaintiff in a "personal and individual way." Spokeo, 578 U.S. at 339 (quotation omitted). A concrete injury is one that actually exists, even if it is intangible. See id. at 340. It must be real and not abstract. See id.

Sasso lacks standing because he suffers no injuries from the car's alleged defects or from Tesla's alleged warranty scheme. Plaintiffs allege Sasso "placed an online order on behalf of Plaintiff Challenge Printing for a new 2016 Model S 60D . . . . The intended purpose of the ordered vehicle was to provide Sasso with a company vehicle which would be for his exclusive and primary use." Am. Compl. ¶ 24 (emphasis added). Sasso and Challenge Printing split the costs of software upgrades and other services for the car; however, plaintiffs do not allege that Sasso and Challenge Printing split the cost of the car itself. See id. ¶¶ 26–27. Sasso's name, not Challenge Printing's

5

name, was on the purchase agreement, but Sasso listed his company email address. See [D.E. 11-6] 2. Plaintiffs do not allege whose name is on the car's title. Plaintiffs' alleged injuries are the diminished value of the car because of the yellow-band defect and lost value of the warranty resulting from Tesla's alleged changes to the warranty. See Am. Compl. ¶ 53. Taking these allegations as true, Sasso was acting as Challenge Printing's agent when he purchased the car. Challenge Printing, as the car's owner, suffers any lost value resulting from the alleged touchscreen defect and warranty changes. Because Sasso does not own the car, he suffers no individual injury and thus lacks standing. See, e.g., Lieberson v. Johnson & Johnson Consumer Cos., 865 F. Supp. 2d 529, 537 (D.N.J. 2011).

Sasso plausibly alleges that he incurred personal costs related to software upgrades, accessories, annual servicing, and installing a charging station in his home. See Am. Compl. ¶ 27. Even so, the losses alleged in this case involve the loss of the vehicle's value and the lost value of the warranty. Challenge Printing, as the car's owner, incurred those losses. Plaintiffs do not allege that the yellow band on the touchscreen impairs Sasso's ability to use the software upgrades he purchased. Plaintiffs also do not allege that the annual servicing or accessories, for which Sasso personally paid, concerned the touchscreen or warranty. And plaintiffs do not allege that the yellow band on the touchscreen or the warranty changes render the charging station in Sasso's home inoperable. Thus, Sasso's personal expenditures are not plausibly a part of the lost value of the car or warranty, and his personal costs, without more, do not demonstrate an injury in fact for the purposes of standing.

Sasso also lacks third-party standing to sue on behalf of Challenge Printing. Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Maryland Shall Issue, Inc. v. Hogan, 971 F.3d 199, 214 (4th

6

Cir. 2020) (quotation omitted); see Warth v. Seldin, 422 U.S. 490, 499 (1975). The third-party standing analysis is prudential and examines whether "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Maryland Shall Issue, 971 F.3d at 215 (quotation omitted); see Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984). For a plaintiff to have third-party standing, he must show (1) that he has a close relationship with the party whose right is asserted and (2) that something hinders the right holder's ability to assert his own interests. See Powers v. Ohio, 499 U.S. 400, 411 (1991); Maryland Shall Issue, 971 F.3d at 215. Even assuming Sasso has a sufficiently close relationship with Challenge Printing as an owner and officer of the company, Sasso has not plausibly alleged that Challenge Printing is hindered from asserting its own rights. In fact, Challenge Printing is asserting its rights as a plaintiff in this lawsuit. Thus, Sasso does not have third-party standing to assert claims on behalf of Challenge Printing. Accordingly, the court dismisses Sasso for lack of standing.[1]

## B.

Tesla next argues that Challenge Printing lacks standing to assert a declaratory judgment claim. See [D.E. 17] 23–24.[2] Tesla grounds its arguments in North Carolina law. But Challenge Printing pleaded its declaratory judgment claim under 28 U.S.C. § 2201. See Am. Compl. at 35. Thus, the claim arises under federal law. Moreover, "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction." White v. Nat'l Union Fire Ins. Co. of Pittsburgh, 913 F.2d 165, 167 (4th Cir. 1990)

---

[1] Because the court concludes Sasso lacks standing, the court need not address Tesla's argument under Federal Rule of Civil Procedure 17. See [D.E. 17] 28.

[2] Because the court dismisses Sasso as a plaintiff, the remainder of the order addresses Challenge Printing. Even if Sasso has standing, however, the court's conclusions in this order would apply equally to Sasso's substantive claims.

7

(quotation omitted); see Wilkerson Francis Investments, LLC v. Am. Zurich Ins. Co., No. 3:19cv582, 2020 WL 4238429, at *4 (E.D. Va. July 23, 2020) (unpublished).

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," so long as the case is a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is purely remedial and does not create jurisdiction or create substantive rights. See CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 55–56 (4th Cir. 2011); Lotz Realty Co., Inc. v. HUD, 717 F.2d 929, 932 (4th Cir. 1983); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950). Thus, "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." CGM, 664 F.3d at 55–56 (alteration in original) (quotation omitted); see Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth., 108 F.3d 658, 668 (6th Cir. 1997). In light of these principles, a district court may issue a declaratory judgment where it has subject-matter jurisdiction and two other conditions are satisfied: (1) "the dispute must be a 'case or controversy' within the confines of Article III" and (2) the "court, in its discretion, must be satisfied that declaratory relief is appropriate." White, 913 F.2d at 167; see Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019); Miller v. August Mut. Ins. Co., 157 F. App'x 632, 637 (4th Cir. 2005) (per curiam) (unpublished).

Tesla argues that the case or controversy requirement is not met because Challenge Printing lacks standing. To have standing to seek a declaratory judgment, a plaintiff "must establish an ongoing or future injury in fact." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018); see O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974); Brown-Thomas v. Hynie, 441 F. Supp. 3d 180, 201 (D.S.C. 2019); Meyer v. McMaster, 394 F. Supp. 3d 550, 559 (D.S.C. 2019). That injury also must

8

be traceable to the defendant and redressable by a favorable court decision. On December 15, 2020, Challenge Printing filed suit in Wake County Superior Court. See [D.E. 1-1] 1. At the latest, Challenge Printing's warranty expired on that date, four years from when Sasso received the car from Tesla. See Am. Compl. ¶¶ 29, 31. Thus, however allegedly unscrupulous Tesla's warranty changes are, they no long affect Challenge Printing's rights. Challenge Printing no longer has an injury in fact because it is no longer covered under the warranty. And because Challenge Printing is not covered under the warranty, a favorable decision from this court would not benefit the company. Thus, Challenge Printing does not have standing. Stated differently, Challenge Printing's claim for a declaratory judgment became moot the day after plaintiffs filed the complaint. Accordingly, the court dismisses the declaratory judgment claim for lack of subject-matter jurisdiction. See Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) ("When a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." (quotation omitted)).

### III.

Tesla argues that Challenge Printing fails to plausibly allege its remaining claims. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759

9

F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## A.

Tesla first argues Challenge Printing fails to state a claim for breach of the implied warranty of merchantability. See [D.E. 17] 12–13. Under N.C. Gen. Stat. § 25-2-314, contracts for the sale of goods by merchants include an implied warranty that the goods "are fit for the ordinary purposes for which such goods are used." N.C. Gen. Stat. § 25-2-314(2)(c). To establish a breach of this warranty, a plaintiff must plausibly allege: "(1) that the goods bought and sold were subject to an implied warranty of merchantability; (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale; (3) that his injury was due to the defective nature of the

10

goods; and (4) that damages were suffered as a result." Dewitt v. Everready Battery Co., Inc., 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002) (quotations omitted); see Manley v. Doe, 849 F. Supp. 2d 594, 599 (E.D.N.C.), aff'd sub nom. Manley v. Wendy's Int'l, Inc., 490 F. App'x 619 (4th Cir. 2012) (per curiam) (unpublished); Williams v. O'Charley's, Inc., 221 N.C. App. 390, 393, 728 S.E.2d 19, 21 (2012).

Challenge Printing fails to plausibly allege the second element because the touchscreen defect did not render the car unfit for ordinary use. A car's ordinary purpose is to provide transportation. "[W]here a car can provide safe, reliable transportation, it is generally considered merchantable." Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989) (cleaned up); see Reynolds v. FCA US LLC, No. 19-11745, 2021 WL 2682794, at *8 (E.D. Mich. June 30, 2021) (collecting cases); Benipayo v. Volkswagen Grp. of Am., Inc., No. 15-md-02672-CRB, 2020 WL 553884, at *4 (N.D. Cal. Feb. 4, 2020) (unpublished); Pinon v. Daimler AG, No. 1:18-CV-3984-MHC, 2019 WL 11648560, at *11 (N.D. Ga. Nov. 4, 2019) (unpublished); In re FCA US LLC Monostable Elec. Gearshift Litig., 280 F. Supp. 3d 975, 1015 (E.D. Mich. 2017); Bussian v. DaimlerChrylser Corp., 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006); DaimlerChrysler Corp. v. Morrow, 895 So. 2d 861, 864–65 (Ala. 2004); Taterka v. Ford Motor Co., 86 Wis.2d 140, 146, 271 N.W.2d 653, 655 (1978); Nelson v. Wilkins Dodge, Inc., 256 N.W.2d 472, 476 n.3 (Minn. 1977); Tellinghuisen v. Chrysler Group, LLC, No. A13-2194, 2014 WL 4289014, at *3 (Minn. App. Sept. 2, 2014) (unpublished); Brand v. Hyundai Motor America, 226 Cal.App.4th 1538, 1545–47 (2014); Stuck v. Long, 909 So. 2d 686, 692 (La.App. 2d Cir. Aug. 17, 2005). Stated differently, "'[t]he weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of implied warranty of merchantability' for vehicles which are . . . minimally 'fit for the ordinary purpose of providing basic transportation,' and which 'satisfy a minimum level of quality,' even if they fail to perform 'exactly

11

as the buyer expected.'" Haag v. Hyundai Motor America, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (quoting Sheris v. Nissan N. Am., Inc., No. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (unpublished)). For example, in Ford Motor Credit Company LLC v. McBride, defendants alleged a counterclaim for breach of the implied warranty of merchantability because the passenger seat of the car would not stay upright and would instead fall backwards. See 257 N.C. App. 590, 594, 811 S.E.2d 640, 645 (2018). The North Carolina Court of Appeals held that the defendants stated a claim because the faulty passenger seat "mad[e] transportation unsafe and unreliable." Id. at 595–96; 811 S.E.2d at 646; see also Ismael v. Goodman Toyota, 106 N.C. App. 421, 431, 417 S.E.2d 290, 295 (1992) (stating the car's problems left the plaintiff without the car's "use for transportation").

In contrast, Challenge Printing does not plausibly allege that the yellow-band defect renders the car inoperable, unsafe, or unreliable as a mode of transportation. Challenge Printing asserts that a driver must access many of the car's safety and other features using the touchscreen and that the yellow-band defect affects the car's safety, "accessability, readability, and usability." Am. Compl. ¶¶ 19–20. Challenge Printing, however, does not plausibly allege Sasso had difficulty driving the car or using the touchscreen despite the yellow band. Instead, the allegations are bare assertions that do not plausibly allege that the yellow band made the car unsafe, unreliable, or inoperable. See id. ¶ 20. In fact, Challenge Printing nearly concedes the defect is purely cosmetic. See [D.E. 22] 11 (discussing "aesthetic defects"). Moreover, Challenge Printing does not suggest Sasso ever stopped using the car as a means of transportation for company business. Thus, Challenge Printing has not plausibly alleged the second element of a claim for breach of the implied warranty of merchantability, and the court dismisses the claim.

12

**B.**

Tesla next argues Challenge Printing does not plausibly allege breach of the car warranty or breach of an express warranty based on representations allegedly made by Tesla employees. See [D.E. 17] 13–16. Under N.C. Gen. Stat. § 25-2-313, a seller creates an express warranty through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.C. Gen. Stat. § 25-2-313(1)(a). To state a claim for breach of an express warranty, a plaintiff must plausibly allege: "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc., 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010) (quotation omitted); see City of High Point v. Suez Treatment Sols., Inc., 485 F. Supp. 3d 608, 627 (M.D.N.C. 2020); Ford Motor Credit Co., 257 N.C. App. at 596, 811 S.E.2d at 646. A plaintiff must also plausibly allege that "the breach proximately caused the loss sustained." City of High Point, 485 F. Supp. 3d at 627. Finally, a plaintiff must plausibly allege that the defect breaching the express warranty existed at the time of sale. See id. at 628; Riley v. Ken Wilson Ford, Inc., 109 N.C. App. 163, 170, 426 S.E.2d 717, 721 (1993); Pake v. Byrd, 55 N.C. App. 551, 554, 286 F.3d 588, 590 (1982).

Challenge Printing has not plausibly alleged the defect existed at the time of sale. See, e.g., Riley, 109 N.C. App. at 170, 426 S.E.2d at 721; Pake, 55 N.C. App. at 554; 286 S.E.2d at 590. Showing the car experienced problems close to the time of sale can create an inference that the defect existed at the time of sale. For example, in Riley, "the fact that the oil warning light came on en route home from the dealership is evidence that certain problems existed at the beginning." Riley, 426 N.C. App. at 170, 426 S.E.2d at 722. In Stutts, the truck owner noticed a wiring problem the

13

day he took delivery of the truck and an oil leak and other problems within two months of owning the truck. See Stutts, 47 N.C. App. at 509–10, 513, 267 S.E.2d at 923, 925. In Ford Motor Credit Company, the passenger seat began to fall backwards and would not stay upright within 24 hours of the purchase. See Ford Motor Credit Co., 257 N.C. App. at 591, 811 S.E.2d at 643–44. In Anders v. Hyundai Motor America Corporation, the plaintiff's car problems arose soon after the purchase, and the plaintiff took the car in for repair about 20 times in the first four months he owned the car. See 104 N.C. App. 61, 63, 407 S.E.2d, 618, 619–20 (1991).

In contrast, Sasso got the car from Tesla on December 15, 2016. See Am. Compl. ¶ 31. However, the yellow band did not appear on the touchscreen until June 15, 2018, roughly a year and a half later. See id. ¶ 33. Thus, Challenge Printing does not plausibly allege the defect existed at the time of sale. In opposition, Challenge Printing alleges the touchscreen was defective from the beginning because the touchscreen failed to meet industry standards given it was not rated to withstand the range of temperatures and exposure to sunlight that cars endure when parked outside. See id. ¶¶ 55–61. But buying a product that works at the time of purchase but will likely fail over a year later is not the same as buying a product that is already defective at the time of sale. Even assuming the touchscreen's failure to meet industry standards may indicate a latent defect, that indication does not suffice on its own. Cf. Goodman v. Wenco Foods, Inc., 333 N.C. 1, 17, 423 S.E.2d 444, 452 (1992) ("Proof of compliance with government standards is no bar to recovery on a breach of warranty theory: although such evidence may be pertinent to the issue of the existence of a breach of warranty, it is not conclusive."); Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 159 N.C. App. 135, 141, 582 S.E.2d 632, 637 (2003) ("[C]ompliance with governmental standards is not determinative of whether the product is defective."). Challenge Printing has not plausibly alleged any additional basis for showing the defect existed at the time of sale. Thus, the claim fails.

14

Challenge Printing also alleges Tesla expressly warranted it would make a copy of the warranty available when Sasso picked up the car. See [D.E. 22] 24; Am. Comp. ¶¶ 28, 30. When Sasso picked up the car on December 15, 2016, Tesla allegedly did not provide a copy of the warranty. See Am. Compl. ¶¶ 31, 65. Challenge Printing also alleges that when Sasso went online to the MyTesla account, the warranty was not a 2016 warranty but a warranty post-dating the purchase of the car. See id. ¶ 66. But Challenge Printing only alleges facts indicating Sasso attempted to get the warranty from the online account on February 5, 2020, years after the purchase. Putting aside whether Tesla allegedly changed the terms of the warranty, plaintiffs do not plausibly allege that Sasso went online in 2016 to get a copy of the warranty or that the correct warranty was not available to Sasso online when Challenge Printing purchased the car. See id. ¶¶ 30–32, 65–74. Even so, the purchase agreement said Tesla would provide "a written copy . . . upon request," [D.E. 11-6] 4, and Tesla representatives were unable to provide Sasso a copy of the 2016 warranty. See id. ¶¶ 67–74.

Taking Challenge Printing's allegations as true, Challenge Printing fails to state a claim. The inability to get a copy of the warranty is not a plausible allegation that a defect existed in the car Challenge Printing purchased. Moreover, Challenge Printing must plausibly allege that "the breach proximately caused the loss sustained." City of High Point, 485 F. Supp. 3d at 627. Challenge Printing does not plausibly allege that its inability to obtain a particular copy of the warranty proximately caused its injuries. As for the yellow-band defect, Tesla acknowledged the warranty covers the issue and replaced the touchscreen once. See Am. Comp. ¶ 35. Even though Tesla has failed to provide a permanent solution, Tesla still apparently acknowledges the warranty covers the issue. Moreover, Challenge Printing alleges Tesla's unilateral changes to the warranty, not the inability to get a copy, have diminished the value of the warranty. See Am. Compl. ¶¶ 75–77.

15

Accordingly, the claim fails.

Challenge Printing also alleges Tesla breached numerous other express warranties in addition to those already discussed. See id. ¶¶ 28, 119. Challenge Printing's allegations are bare assertions. See Am. Compl. ¶ 119. Indeed, Challenge Printing has "failed to identify any specific words, promises, affirmations, or statements . . . that would create an express warranty." McCauley v. Hospira, Inc., No. 1:11CV108, 2011 WL 3439145, at *6 (M.D.N.C. Aug. 5, 2011) (unpublished). Challenge Printing does not plausibly allege who made the representations, when they made them, where they appear in Tesla's advertising or other materials, or any other details. Even if the screenshots of information and advertising on Tesla's website that plaintiffs submitted to the court are sufficient to demonstrate Tesla made statements that are express warranties (as opposed to being mere puffery), see [D.E. 11-1, 11-2, 11-3, 11-4], Challenge Printing does not plausibly allege Sasso read these portions of the website before purchasing the car. See Am. Compl. ¶¶ 24–29; see also Maxwell v. Remington Arms Co., LLC, No. 1:10CV918, 2014 WL 5808795, at *4 (M.D.N.C. Nov. 7, 2014) (unpublished) (holding no reliance on express warranty, in part, because "Plaintiff never alleged that he even observed Defendant's advertisements"). Thus, Challenge Printing does not plausibly state a claim, and the court dismisses the claims for breach of express warranty.

## C.

Tesla contends Challenge Printing failed to plausibly allege violations of the Magnuson-Moss Warranty Act. See [D.E. 17] 17. The MMWA provides a federal remedy for breach of warranty. See Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (discussing the MMWA). The act "supplements, rather than supplants state law." Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 545 (D. Md. 2011); see Carlson, 883 F.2d at 291. The provision creating a private cause of action states: "Subject to subsections (a)(3) and (e), a consumer who is damaged by the failure of a supplier,

16

warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1).[3]  Under this provision, a plaintiff can "state a claim by alleging either a violation of the MMWA's substantive provisions or by satisfying the requirements for a state-law cause of action." Collette v. Sig Sauer, Inc., No. 21-11392-FDS, 2021 WL 6052613, at *5 (D. Mass. Dec. 21, 2021) (unpublished).  Challenge Printing alleges both types of claims.

As for Challenge Printing's MMWA claim that is derivative of its state-law claims for breach of express and implied warranties, see Am. Compl. ¶ 130(a)–(b), Challenge Printing fails to state a claim. "To determine whether there has been a breach of a written or implied warranty in violation of the MMWA, courts must apply applicable state express and implied warranty law." Johnson v. Ford Motor Co., No. 3:13-6529, 2015 WL 7571841, at *16 (S.D.W. Va. Nov. 24, 2015) (unpublished); see Carlson, 883 F.2d at 291.  Stated differently, "[w]hen the MMWA claim is premised on borrowed state-law warranty claims, MMWA claims stand or fall with the state-law claims." Sandoval v. PharmaCare US, Inc., 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015) (quotations omitted); see Clemens v. Daimler Chrysler Corp., 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008); Doll,

---

[3] Challenge Printing's amended complaint contains class allegations. See Am. Compl. ¶¶ 91–98. Under the MMWA, a court only has federal question jurisdiction over a class-action MMWA claim if "the number of named plaintiffs" exceeds 100. 15 U.S.C. § 2310(d)(3); Ware v. Best Buy Stores, L.P., 6 F.4th 726, 731–32 (7th Cir. 2021); Misel v. Mazda Motor of N. Am., Inc., 420 F. App'x 272, 273–74 (4th Cir. 2011) (per curiam) (unpublished). Challenge Printing and Sasso allege no other named plaintiffs in this lawsuit. See Am. Compl. at 1; see also Ware, 6 F.4th at 732. However, because the parties agree this court has original jurisdiction over Challenge Printing's state-law claims under the Class Action Fairness Act, see 28 U.S.C. § 1332(d), the court may exercise supplemental jurisdiction over Challenge Printing's MMWA claim. See 28 U.S.C. § 1367; Ware, 6 F.4th at 733–34; cf. Scott v. Cricket Commc'ns., LLC, 865 F.3d 189, 194 n.3 (4th Cir. 2017). Thus, the court considers the claim.

17

814 F. Supp. 2d at 545; Bussain, 411 F. Supp. 2d at 624–25; see also [D.E. 22] 28 (conceding the MMWA claim depends on the viability of the state-law claims). Accordingly, because Challenge Printing failed to plausibly allege its state-law claims, its derivative MMWA claim fails.

As for Challenge Printing's claim that Tesla failed to comply with the MMWA's substantive requirements, see Am. Compl. ¶ 130(c)–(f), Challenge Printing fails to state a claim. Challenge Printing alleges Tesla failed to disclose the terms of its warranty in clear language and did not make the warranty available before the sale. See id. ¶¶ 30–31; 130(e). The MMWA requires that warrantors "fully and conspicuously disclose [their written warranties] in simple and readily understood language" and that "the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him." 15 U.S.C. § 2302(a), (b)(1)(A); see Atchole v. Silver Spring Imports, Inc., 379 F. Supp. 2d 797, 801–02 (D. Md. 2005). A warrantor may make a warranty available pre-sale by "[d]isplaying it in close proximity to the warranted product," including on the internet, or by "[f]urnishing it upon request prior to sale." 16 C.F.R. § 702.3(a). Even if the warranty was not easily available online, Challenge Printing does not plausibly allege that Sasso asked for a copy of the warranty before buying the car. Moreover, Challenge Printing does not plausibly allege Sasso attempted to obtain a copy of the warranty from plaintiffs' online MyTesla account in 2016 when he purchased the car for Challenge Printing. At most, Challenge Printing alleges Sasso tried to obtain a copy of the warranty on "various occasions" but only specifically describes an attempt in February 2020, years after the purchase. Am. Compl. ¶ 66.

Challenge Printing also alleges Tesla violated the MMWA by "circulating and unlawfully misrepresenting inapplicable warranty documents to its consumers." Am. Compl. ¶ 130(d). Challenge Printing does not cite any statute or regulation in support of this allegation. Taking

18

Challenge Printing's allegations and all reasonable inferences drawn therefrom as true, Challenge Printing plausibly alleges that by changing which warranty version is available to customers, without a basis for doing so, Tesla fails to disclose the warranty terms applicable to each customer's car in clear and conspicuous language. See 16 C.F.R. § 701.3(a). Assuming without deciding that such conduct plausibly violates the MMWA, Challenge Printing does not plausibly allege it was damaged by Tesla's allegedly unlawful practice, as discussed below.

Challenge Printing also alleges Tesla improperly granted itself sole authority to decide whether a defect exists within the scope of the warranty. See Am. Compl. ¶ 130(f). A warrantor may not "state that it alone shall determine what is a defect under the agreement." 16 C.F.R. § 700.8. But Challenge Printing does not cite language in the warranty supporting this allegation. Although Tesla reserved the right to decide whether to use new or used parts to repair defects, the warranty does not state that Tesla alone decides what is covered. See, e.g., [D.E. 11-12] 7. Indeed, that Tesla provides a dispute resolution mechanism for consumers disputing coverage under the warranty belies the contention that Tesla made itself the sole arbiter of whether defects are covered. See, e.g., id. at 14–16.

Plaintiffs' standalone MMWA claims suffer a more fundamental defect. The statutory cause of action says that "a consumer who is damaged" by the warrantor's failures may bring suit. 15 U.S.C. § 2310(d). To bring suit, then, a plaintiff must plausibly allege "he has sustained actual damage, proximately caused by" the defendant's alleged failures. Atchole, 379 F. Supp. 2d at 802. Challenge Printing alleges it suffered the lost value of the warranty. See Am. Compl. ¶¶ 75–77. But Challenge Printing does not plausibly allege what that value is or how to determine it, especially given the allegation that this loss is distinct from changes in the value of the car itself. Moreover, as discussed below, none of the changes Challenge Printing alleges Tesla made to the warranty

19

directly affect Challenge Printing's alleged touchscreen troubles. Stated differently, none of the alleged changes affected Tesla's obligations to Challenge Printing regarding the allegedly defective touchscreen. Without more, Challenge Printing does not plausibly allege it suffered actual harm as a result of Tesla's alleged failure to comply with the MMWA's substantive provisions. Thus, the court dismisses plaintiffs' MMWA claims.[4]

### D.

Tesla argues Challenge Printing failed to plausibly allege that Tesla breached the covenant of good faith and fair dealing. See [D.E. 17] 17–18. Under North Carolina law, contracts implicitly contain "the basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform [its] obligations under the agreement." Maglione v. Aegis Fam. Health Ctrs., 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quotation omitted); see Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228–29, 333 S.E.2d 299, 305 (1985). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (quotation and alteration omitted); see Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996). While breach of the implied covenant of good faith and fair dealing is a separate claim from breach of contract, see Nadendla v. WakeMed, No. 21-1300, 2022 WL 187835, at *5–6 (4th Cir. Jan. 21, 2022), North Carolina courts have found that where there was no breach of contract, "it would be illogical . . . to conclude that [the party] somehow breached implied terms of the same contract." SunTrust Bank v. Bryant/Sutphin Props.,

---

[4] Because the court dismisses the MMWA claims under Rule 12(b)(6), the court need not address the parties' dispute about the warranty's arbitration provisions.

20

LLC, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012); see Arnesen v. Rivers Edge Golf Club
& Plantation, Inc., 368 N.C. 440, 451, 781 S.E.2d 1, 9 (2015); Spitzer-Tremblay v. Wells Fargo
Bank, N.A., 250 N.C. App. 508, 793 S.E.2d 281, 2016 WL 6695825, at *4 (2016) (unpublished table
decision); see also Sutherland v. Domer, No. 1:17CV769, 2018 WL 4398259, at *5 (M.D.N.C. Sept.
14, 2018) (unpublished) ("When a plaintiff's claim for breach of the implied covenant of good faith
is based on an alleged breach of the express terms of the contract, these two claims are treated as a
single breach of contract issue and evaluated together. . . . Where a plaintiff argues that the implied
covenant was breached separate and apart from express breaches of the contract, it remains true that
the implied covenant can never produce a result contrary to, or inconsistent with, the express
language used in the agreement." (citation omitted)). Accordingly, Challenge Printing's breach of
implied covenant of good faith and fair dealing claim fails for the same reason as its breach of
warranty claims.

E.

Tesla next argues Challenge Printing failed to plausibly allege an unfair and deceptive trade
practices claim because it failed to comply with Federal Rule of Civil Procedure 9(b) and because
it failed to plausibly state a claim on the merits. See [D.E. 17] 18–23. Rule 9(b) provides that "[i]n
alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud
or mistake." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under
Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the
person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse
Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted); see Edmonson v. Eagle
Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019). "[L]ack of compliance with Rule 9(b)'s pleading
requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783

21

n.5. Nonetheless, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Edmonson, 922 F.3d at 553 (quotation omitted); see Harrsion, 176 F.3d at 784.

An action for unfair or deceptive trade practices is distinct from a breach of contract claim. Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). Even an intentional breach of contract, standing alone, is not an unfair or deceptive trade practice. See Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); Branch Banking, 107 N.C. App. at 61–62, 418 S.E.2d at 700. However, "unfairness or deception either in the formation of the contract or in the circumstances of its breach" may be sufficiently immoral, unethical, oppressive, unscrupulous, or substantially injurious to "establish the substantial aggravating circumstances needed to support the maintenance of an unfair and deceptive trade practices claim." SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); see Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) . To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker, 362 N.C. at 71–72, 653 S.E.2d at 399 (quotation omitted); see SciGrip, 373 N.C. at 426, 838 S.E.2d at 347. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). "[I]t is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed

22

the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., Inc., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (alteration and quotation omitted); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981).

To state a claim based on alleged misrepresentations, a plaintiff must plausibly allege "reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers, 367 N.C. at 88–89, 747 S.E.2d at 226. "Reliance, in turn, demands evidence showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Id. at 89, 747 S.E.2d at 227 (quotation omitted). The burden of proof is similar to a fraud claim. See id., 747 S.E.2d at 227.

As for Challenge Printing's unfair and deceptive trade practices claim concerning the yellow-band defect, those allegations rehash the company's breach of warranty claims. See Am. Compl. ¶ 114(a). A "claim of unfair and deceptive trade practices" that "is in essence a claim for breach of warranty" is "insufficient to sustain a claim for unfair and deceptive trade practices." Buffa v. Cygnature Constr. & Dev., Inc., 251 N.C. App. 526, 796 S.E.2d 64, 2016 WL 7984216, at **7 (2016) (unpublished table decision); see Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012). For example, in Ellis, the plaintiff alleged that the defendant "knew [the product] could not live up to the terms of the warranty." Ellis, 699 F.3d at 787. The Fourth Circuit held this was not sufficient as an aggravating factor. So too here. Challenge Printing alleges Tesla knew its touchscreens were poor quality and instead marketed them as high quality. See Am. Compl. ¶¶ 28, 60; [D.E. 22] 17. That allegation is essentially a breach of warranty claim without aggravating factors sufficient to state an unfair and deceptive trade practices claim. See Ellis, 699 F.3d at 787.

23

Thus, the claim fails.[5]

As for Challenge Printing's unfair and deceptive trade practices claim concerning the alleged warranty scheme, Challenge Printing's allegations fall into two categories: allegations involving misrepresentations and allegations involving unfair, unilateral changes to the warranty. See Am. Compl. ¶ 114(b)–(e). As for Challenge Printing's claim based on alleged misrepresentations, the court dismisses the claim under Rule 9(b). Although Rule 9(b) applies primarily to fraud and mistake, a strong correlation exists between a traditional fraud claim and an unfair and deceptive trade practices claim based on detrimental reliance on deceptive misrepresentations, even when the alleged misrepresentations do not constitute fraud. Based on that strong correlation, Rule 9(b) applies to unfair and deceptive trade practices claims based on alleged misrepresentations. See, e.g., Cross v. Ciox Health, LLC, 438 F. Supp. 3d 572, 584–86 (E.D.N.C. 2020); Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 728–32 (M.D.N.C. 2015). Challenge Printing alleges Tesla withheld customers' warranties, "deceptively" failed to honor the warranties, "swapp[ed] and misrepresent[ed]" customers' documents, and "affirmatively misrepresented to its consumers" how changes to the warranty superseded older versions. Am. Compl. ¶¶ 79, 114(d)–(e); see [D.E. 22] 18 (stating Tesla "affirmatively misrepresent[ed] plaintiffs' warranty). Challenge Printing not plausibly allege when these misrepresentations took place, who made them, or the particularities of the misrepresentations' contents. Without more detail, Tesla may not be "aware of the particular circumstances for which [it] will have to prepare a defense at trial." Edmonson, 922 F.3d at 553 (quotation omitted) (alteration in original). Thus, to the extent Challenge Printing relies on alleged misrepresentations for its unfair and deceptive trade practices claim, the court dismisses the claim

---

[5] Because this separate ground exists to dismiss plaintiffs' claim, the court need not address Tesla's argument that North Carolina's "economic loss rule" bars the claim. See [D.E. 17] 20–22.

24

under Rule 9(b).

Finally, Challenge Printing alleges Tesla made unilateral modifications to the warranty, without notice to customers, that alter customers' rights to their detriment and Tesla's benefit. See Am. Compl. ¶¶ 75–82. These allegations do not directly involve fraud or misrepresentation; therefore, the court applies the Rule 8 pleading standard.

Assuming without deciding that Challenge Printing plausibly alleged the first two elements of an unfair and deceptive trade practices claim, it has not plausibly alleged injury resulting from Tesla's alleged unfair warranty practices. Challenge Printing alleges Tesla made changes to the warranty concerning coverage related to the mileage covered under the warranty, rust, thunderstorms, battery life, minor adjustments made by Tesla owners, and Tesla's use of reconditioned parts to make repairs. See Am. Compl. ¶ 75 & n.34–38. Challenge Printing alleges these changes decrease the value of the warranty to the car owner but does not allege by how much or how to determine that value given that Challenge Printing alleges this injury is distinct from changes in the value of the car itself. See Am. Compl. ¶ 77. And insofar as the warranty existing at the time of sale is the binding warranty, Tesla's changes to the warranty it makes available online means consumers may not have sufficient access to the correct warranty to know and assert their rights under it. See id. ¶ 3. However, Challenge Printing does not plausibly allege Tesla rejected repairs Challenge Printing needed under the warranty or that Tesla disclaimed coverage of the touchscreen in later versions of the warranty. Stated differently, none of the warranty changes Challenge Printing alleges concern the touchscreen, which is the component Challenge Printing needs fixed under the warranty. Challenge Printing does not plausibly allege damage from rust, thunderstorms, diminished battery life, Tesla putting a reconditioned touchscreen in its car, or any of the other alleged changes. Thus, assuming without deciding that Challenge Printing plausibly alleges an unfair scheme, it does not

25

plausibly allege a particular injury it suffered as a result of the scheme. Accordingly, the court dismisses the claim.[6]

F.

As for plaintiffs' claim for punitive damages, it is not a stand-alone claim. See Sykes v. Health Network Sols., Inc., 372 N.C. 326, 329, 828 S.E.2d 467, 469 (2019); Funderburk v. JPMorgan Chase Bank, N.A., 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015). Because the court dismisses plaintiffs' other claims, the court also dismisses the claim for punitive damages.

IV.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 16], DISMISSES WITHOUT PREJUDICE plaintiff Sasso for lack of standing under Rule 12(b)(1), DISMISSES WITHOUT PREJUDICE Challenge Printing's claim for a declaratory judgment for lack of subject-matter jurisdiction, and DISMISSES WITHOUT PREJUDICE Challenge Printing's remaining claims under Rule 12(b)(6).

SO ORDERED. This _7_ day of February, 2022.

JAMES C. DEVER III<br>
United States District Judge

---

[6] Even if Challenge Printing did sufficiently allege an injury in light of its claim for injunctive relief (rather than damages), see Am. Compl. at 42, the claim for injunctive relief is moot because Challenge Printing is no longer covered under the warranty. A court order enjoining the alleged warranty scheme would not redress Challenge Printing's injuries. See Kenny, 885 F.3d at 288.

26